UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TOWN OF GREENBURGH,

                Plaintiff,

-against-

SPECTRASERV, INC. and LIBERTY MUTUAL
INSURANCE COMPANY,

                Defendants.
------------------------------------------------------------------X
SPECTRASERV, INC. and LIBERTY MUTUAL
INSURANCE COMPANY,

                Third-Party Plaintiffs,

-against-

M.G. McLAREN, P.C. and DOLPH ROTFELD
ENGINEERING, P.C.,

                Third-Party Defendants.
------------------------------------------------------------------X

**ECF CASE**
07 Civ. 6966 (WCC)

**DECLARATION**

Malcolm G. McLaren, P.E., hereby declares the truth of the following under the penalties of perjury and pursuant to 28 U.S.C. §1746:

1.    I am the principal of M.G. McLaren, P.C. ("McLaren") and a professional engineer licensed to practice in the State of New York. I submit this declaration in support of third-party defendant McLaren's motion which seeks dismissal of Spectraserv, Inc.'s and Liberty Mutual Insurance Company, Inc.'s Third Party Complaint against McLaren in its entirety.

2.    McLaren was retained by Dolph Rotfeld Engineering, P.C. ("Rotfeld")

2

pursuant to a written contract dated June 2, 1999. A copy of the contract is annexed hereto as Exhibit "1". Pursuant to the Rotfeld/McLaren Agreement, McLaren agreed to provide the following services: preparation of a subsurface exploration plan and interpretation of borings for relevant soil characteristics; design of a mat foundation, based upon results of subsurface investigation; and preparation of structural drawings indicating all structural steel and concrete work required for the project.

3.  The project in question consisted of the construction of a 10 million gallon per day pumping station with a 500,000 gallon rectangular concrete tank called a contact tank. The Rotfeld/McLaren Agreement contained information concerning the proper loads and pressures for the contact tank to be designed.

4.  Pursuant to the Rotfeld/McLaren Agreement, McLaren also agreed to provide contract administration services in the form of review of the contractor's detailed shop and erection drawings for approval. Significantly, the Rotfeld/McLaren Agreement did not obligate McLaren to provide site visits during construction, nor did it obligate McLaren to review Spectraserv's payment applications. During the course of construction, McLaren in fact did not conduct any site visits nor did it review Spectraserv's applications for payment.

5.  Pursuant to its contractual obligations, McLaren prepared signed and sealed drawings which were issued on March 27, 2000. The last transmittal for construction administration shop drawing review was dated November 13, 2000. A copy of the transmittal is annexed hereto as Exhibit "2".

3

6. After construction was completed, McLaren was requested by Rotfeld to provide additional professional services. In this regard, Rotfeld requested that McLaren conduct a field visit because there were reports that there were leaks in the contact tank which was discovered while the tank was being tested. Annexed hereto as Exhibit "3" is a copy of McLaren Field Report no. 1 dated January 21, 2003 which details the observations made at the field visit. McLaren next visited the site on March 12, 2003 at which time the tank was fully pressurized to test for leaks. Testing revealed that there were cracks in the tank. A copy of McLaren Field Report no. 2 dated March 12, 2003 is annexed hereto as Exhibit "4".

7. McLaren conducted a further field visit on November 12, 2003 at which time the contact tank was again tested. At that time, numerous cracks in the contact tank were observed. A copy of McLaren's Field Report no. 3 dated November 12, 2003 is annexed hereto as Exhibit "5".

8. McLaren subsequently visited the site again on March 10, 2004 to observe core sampling of the roof slab of the contact tank. Numerous samples were taken as indicated in McLaren's Field Report no. 4 dated March 10, 2004, a copy of which is annexed hereto as Exhibit "6".

9. McLaren subsequently visited the site on March 25 and 26, 2004 at which time selected demolition of the roof slab of the contact tank was performed. During the

4

demolition, it was discovered that the steel reinforcement bar placement that was observed did not conform to the contract drawings prepared by McLaren. Specifically, while the bar size and spacing did conform to the drawings, the clearances between the reinforcing bar and concrete surfaces did not comply with McLaren's contract drawings. In addition, it was observed that the water-stop at the east side of the contact tank was folded over at approximately 45 degrees in one area. McLaren also observed that clods of dirt had been encapsulated up against the water-stop by the concrete at the west side when the concrete had been poured. Both of these conditions would prevent the proper functioning of the water-stop. These findings are detailed in McLaren Field Report no. 5, dated March 25, and 26, 2004 which is annexed hereto as Exhibit "7".

10. Based upon the foregoing, McLaren last provided the design services required by its contract on November 13, 2000 when it completed its shop drawing review. McLaren's subsequent visits in 2003 and 2004 were additional services performed by McLaren and were completed by March 26, 2004. All of the professional engineering services provided by McLaren were provided in accordance with generally accepted engineering standards and practices and were completed, at the latest, by March 26, 2004.

11. I declare under the penalties of perjury that the foregoing is true and correct. Executed on July 1, 2008.

_____
Malcolm G. McLaren, P.E.