THE OFFICE OF

**M. G. McLAREN, P.C.**
**CONSULTING ENGINEERS**

100 Snake Hill Road - P.O. Box 600
West Nyack, New York 10994-0600
Phone (914) 353-6400   Fax (914) 353-6509

E-mail: MGMCLAREN@aol.com   COMPUSERVE 103046.2731

Offices in Westport, Connecticut; Ramsey, New Jersey and Orlando, Florida

Malcolm G. McLaren, PE
Arthur J. DiCesare, PE
Attila I. Rona, PE
George F. Assis, PhD, PE
Steve D. Hodge, PE
John P. Pensiero, PE
Mark S. Bujtas, PE
Peter K. Durkin, PE
Shahin A. Nejad, PE
Zbigniew Legat, PE
Rudolf Dezember, PE

structural design        bridge inspection & design        marine facilities        subaqueous investigation
geotechnics              civil & site engineering          entertainment engineering    curtainwall design

MGM Contract No. 99010

Contract 99010
cc: AR

June 2, 1999

RECEIVED JUN 2 3 1999 M. G. McLAREN, P.C.

Dolph Rotfeld Engineering, P.C.
Consultants & Designers
200 White Plains Road
Tarrytown, New York 10591

Attn:   Mr. Stephen J. Grollman, P.E.                       FAX: 631-5769

Re:    Contact Tank
       Greenburgh-Irvington Pump Station
       Greenburgh, New York

PROPOSAL NO. 99010 (Revised)

M.G. McLaren, P.C., Consulting Engineers ("Consultant") are pleased to submit this proposal to provide structural design services for the referenced project. Services shall include the following:

**PHASE I – Construction Documents**

1. Preparation of subsurface exploration plan and interpretation of borings for relevant soil characteristics.

2. Design of mat foundation, based upon results of subsurface investigations.

3. Provision of sealed structural drawings. Structural drawings shall show all structural steel and concrete work. Drawings will be signed and sealed by a Professional Engineer licensed in the State of New York. Level of detail shown on these drawings will be in accordance with American Concrete Institute Standard 315, Part A – "Responsibilities of the Engineer" and the American Institute of Steel Construction, "Code of Standard Practice" (adopted June 10, 1992), Section 3, "Plans and Specifications".

4. Drawings will contain material and performance specifications for the following:

    a.   Foundations
    b.   Concrete
    c.   Concrete Reinforcing
    d.   Concrete Sealer
    e.   Concrete Coating
    f.   Manholes (pressurized)

Licensed in: New York • Pennsylvania • Maryland • District of Columbia • Delaware • Missouri • Kentucky • New Hampshire • Virginia • Indiana • Minnesota • Mississippi • South Carolina
Nevada • New Jersey • Illinois • California • Connecticut • Ohio • Oregon • Vermont • Massachusetts • Texas • Florida • Georgia • Michigan • Tennessee • Colorado • North Carolina

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York    Page 2
MGM File No. 99010 (Revised)    06/02/99

5. Work shall conform to applicable specifications of the American Water Works Association (AWWA), D-100 and D-115 including provisions for seismic design, jointing of concrete, and reinforcing steel.

6. Contact tank shall be designed for the following loads and pressures:
   a. 500 psf representing three feet of soil cover plus 150 psf live load.
   b. Hood of water. Design pool elevation 308.0. Elevation of contact tank floor 280.0 (28' × 62.4 = 1,750 psf.)
   c. Interior clear height of tank = 10'. Pressure at top of interior walls = 1,125 psf.
   d. Active soil pressure on exterior walls.
   e. Seismic accelerations.

FEE FOR PHASE I    $ 10,500

**PHASE II – Construction Administration**

1. Review of Contractor's detailed shop and erection drawings, for approval. Scope of work includes initial submittal and review of resubmittal which incorporates our comments. Additional reviews will be performed as additional services at hourly rates defined below. Note that shop and erection drawings are prepared by the Contractor as instruments to sequence his work and to facilitate fabrication and erection. Their approval by the Consulting Structural Engineer is not to be construed as a waiver of construction contract requirements or responsibilities unless the Contractor has been granted a deviation from the contract documents in writing.

2. Correspondence during construction, as necessary to clarify or interpret the design intent to the Contractor, in response to Contractor's written requests for information.

FEE FOR PHASE II    $ 2,000

**EXCLUSIONS**

Specifically excluded from this proposal and billable at the hourly rates of $135/hr. for principal time, $105/hr. for associate time, $90/hr. for senior engineer time, $65/hr. for junior engineer time; $60/hr. for CAD operator time, $30/hr. for intern engineer time, and $35/hr. clerical time are the following:

1. Controlled inspection of construction.

2. Review and approval of alternate framing designs proffered by the Contractor.

3. Design of piping or mechanical connections.

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York  Page 3
MGM File No. 99010 (Revised)  06/02/99

4. Corrective revisions due to errors in fabrication or placement of structural items by the Contractor or his subcontractors.

5. Substantial revisions due to changes in shape or location.

6. Site visits during construction of structural aspects of the project. Such observations assist in quality control, coordination, and conformance with drawings and specifications, but do not guarantee contractor's performance.

7. Design of pile foundation system.

8. Review and advice on the disposition of Contractor's change orders, created by the Owner, Architect or Contractor.

**REIMBURSABLE EXPENSES**

The following expenses shall be reimbursed at 1.0 times our cost:

1. Reproduction, mailing and courier costs associated with the execution of this contract.

2. Travel costs for site visits.

3. Laboratory testing of soils, concrete cylinders, steel welds or other items requiring such testing. It shall be the responsibility of the Owner to execute tests recommended by the Structural Engineer.

**SCOPE**

This proposal is based upon one preliminary drawing prepared by Dolph Rotfeld Engineering, P.C., dated November 18, 1998. The drawing describes a single rectangular concrete tank 125' x 60' in plan, 10' high with five interior walls creating a flow chamber. The cross baffles shown on this drawing have been eliminated and are not part of the scope of work. Any substantial change in scope shall be cause for renegotiation of this contract.

**INFORMATION REQUIRED**

It shall be incumbent upon the Architect to provide us with the following:

1. Title and edition of Building Code in force, and identification of any amendments in effect.

2. Soil boring logs and a report from a qualified soils engineer recommending allowable bearing pressure, foundation type, groundwater elevations, specifications for the placement of fill or working of soils.

3. Topographic site plan.

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York  Page 4
MGM File No. 99010 (Revised)  06/02/99

4. Architectural plans, details, and specifications.

5. Timely approval of structural plans for each phase of design. Once each phase is accepted, substantial revisions shall be cause for redesign as additional services.

6. Review of structural plans for compliance with architectural requirements.

7. A compilation of structural design requirements if different than building code requirements.

8. Drawing format and title blocks.

9. Timely provision of drawings for all trades, including mechanical and electrical gravity loads, location of openings and chases.

This proposal is subject to the terms and conditions which follow, and hourly rates defined above are subject to revision twelve months after the date of this proposal.

Should you find this proposal acceptable, kindly sign and return one copy to serve as our contract. Work shall commence upon receipt of signed contract.

This proposal shall remain valid only until June 15, 1999, unless it is accepted as a contract. Hourly rates defined above are subject to revision twelve months after the date of this proposal.

Very truly yours,

The Office of
**M.G. McLAREN, P.C.**

*[signature]*

Malcolm G. McLaren, P.E.
President

MGM/js

cc: Mrs. Diane Hutt – Internal
    Proposal File 99010

ACCEPTED: _____  _____  June 16, 1999
For Dolph Rotfeld Engineering, P.C.   Title: President   Date

**M. G. McLAREN, P.C.**   CONSULTING ENGINEERS

| | |
|---|---|
| Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York | Page 5 |
| MGM File No. 99010 (Revised) | 06/02/99 |

## TERMS AND CONDITIONS

1. **SERVICES TO BE PROVIDED.** M.G. McLaren, P.C., through and by its officers, employees and subcontractors, (hereinafter MGM) is an independent consultant and agrees to provide Client, for its sole benefit and exclusive use, consulting services set forth in our proposal. No third party beneficiaries are intended by this agreement.

2. **PAYMENT TERMS.** Client agrees to pay MGM's invoice upon receipt. If payment is not received within 30 days from the Client's receipt of MGM's invoice, Client agrees to pay a service charge on the past due amount at the greater of 1% per month or the allowable legal rate, including reasonable attorney's fees and expenses if collected through an attorney. No deduction shall be made from MGM's invoice on account of liquidated damages unless expressly included in the Agreement. Client receipt of invoice will be presumed three days after mailing by MGM first class, with adequate postage attached. Time is of the essence for this provision.

   Client payment to MGM shall not depend, or be conditioned upon payment by the Owner or others to Client. Client's obligation to pay MGM for its services shall be independent of payment by the Owner to Client.

3. **TERMINATION.** Either party may terminate this Agreement without cause upon 30 days prior written notice. This Agreement will terminate automatically upon the insolvency of Client. In the event Client requests termination prior to completion of the proposed services, Client agrees to pay MGM for all reasonable charges incurred to date and associated with termination of the work, plus a termination fee of 10% of the total fee under this agreement.

   If the Project is suspended for more than thirty consecutive days, for reasons other than MGM's fault, MGM shall be compensated for services performed prior to such suspension. When the project is resumed, our compensation shall be equitably adjusted.

   If Client abandons the Project because of the Owner's abandonment of the Project for more than ninety consecutive days, MGM may terminate this Agreement by giving written notice. MGM shall be compensated for all services performed prior to such abandonment, plus 10% of MGM total fee under this Agreement, together with reimbursables then due.

4. **STANDARD OF CARE.** MGM will perform its services using that degree of care and skill ordinarily exercised under similar conditions by reputable members of MGM's profession practicing in the same or similar locality at the time of service. No other warranty, express or implied, is made or intended by the MGM's proposal or by its oral or written reports.

5. **INSURANCE.**

   Both MGM and Client will effect and maintain insurance to protect themselves from claims arising out of the performance of professional services under this Agreement and caused by any error, omission or negligent act for which we are legally liable. Both MGM and Client will maintain this insurance in force, if available, after the completion of professional services under this Agreement until the expiration of any applicable statutes of limitation. In the event there is no such statute specifically applicable to design and construction of improvements to real property, this insurance, if available, shall be maintained in force by both parties for a period of six (6) years after the date of substantial completion of the Project as agreed to.

   Unless otherwise agreed, both parties will effect and maintain insurance to protect ourselves from claims under workers' or workmen's compensation acts; from claims for damages because of bodily injury, including personal injury, sickness, disease, or death of any employees or of any other person; from claims

| | | |
|---|---|---|
| Terms and Conditions | December 1998 Edition | M.G. McLaren, P.C. |
| | | Consulting Engineers |

**M. G. McLAREN, P.C.**                                                                 **CONSULTING ENGINEERS**

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York  Page 6
MGM File No. 99010 (Revised)  06/02/99

for damages because of injury to or destruction of property including loss of use resulting therefrom; and from damage to or destruction of property including valuable papers and records coverage and including loss of use resulting therefrom.

The insurance required above shall be as provided below. MGM and Client will file with each other certificates of insurance for each type and amount prior to commencement of work under this agreement:

Professional Liability Insurance (Errors & Omissions), with a limit of $1,000,000 for each claim and $2,000,000 in the aggregate.

Comprehensive General Liability - $1,000,000 per occurrence, $1,000,000 Aggregate Bodily Injury and Property Damage; Blanket Contractual All Operations Completed Operations; $1,000,000 Personal Injury A.B.C., plus $4,000,000 Excess Liability Umbrella.

Worker's Compensation/Coverage A - Statutory/Coverage B - $1,000,000

6. **SITE OPERATIONS.** Client will arrange for right-of-entry to the property for the purpose of performing project management, studies, tests and evaluations pursuant to the agreed services. Client represents that it possesses necessary permits and licenses required for its activities at the site.

MGM will take reasonable precautions to minimize damage to the property caused by its operations. Unless otherwise stated in MGM's proposal, the Contract Sum does not include cost of restoration due to any related damage which may result. If Client requests MGM to repair such damage, it will be done at an appropriate additional cost to be paid by Owner.

7. **UNFORESEEN CONDITIONS OR OCCURENCES.** It is possible that unforeseen conditions or occurrences may be encountered at the site which could substantially alter the necessary services or the risks involved in completing the MGM's services. If this occurs, MGM will promptly notify and consult with Client, but will act based on MGM's sole judgment where risk to MGM's personnel is involved. Possible actions could include:

   a. Complete the original Scope of Services in accordance with the procedures originally intended in this Agreement, if practicable in MGM's judgment;

   b. Agree with Client to modify the Scope of Services and the estimate of charges to include study of the unforeseen conditions or occurrences, with such revision agreed to in writing;

   c. Terminate the services effective on the date specified by MGM in writing.

8. **DOCUMENTS.** MGM will furnish Client the agreed upon number of written reports and supporting documents. These instruments of service are furnished for Client's exclusive internal use and reliance, use of Client's counsel and for regulatory submittal in connection with the project provided for in this Agreement, but not for advertising or other type of distribution, and are subject to the following:

   a. All documents including paper documents and electronic files generated by MGM under this Agreement shall remain the sole property of MGM. Any unauthorized use or distribution of MGM's work shall be at Client's and recipient's sole risk and without liability to MGM. MGM may retain a confidential file copy of its work product and related documents.

   b. If Client desires to release, or for MGM to provide, our documents to a third party not described above for that party's reliance, MGM will agree to such release provided MGM receives written acceptance from such third party to be bound by acceptable terms and conditions similar to this Agreement. Documents provided for disclosure of information only will not require separate agreement. Client acknowledges and agrees to inform such third party that MGM's documents reflects conditions only at the time of the study and may not reflect conditions at a later time. Client further acknowledges that such request creates potential conflict of interest for MGM and by this request Client waives any such claim if MGM complies with the request.

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York     Page 7
MGM File No. 99010 (Revised)     06/02/99

    c. Client agrees that all documents furnished to Client or Client's agents or designees, if not paid for will be returned upon demand and will not be used by Client or any other entity for any purpose whatsoever. Client further agrees that documents produced by MGM pursuant to this Agreement will not be used for any project not expressly provided for in this Agreement without MGM's prior written approval.

    d. Client shall furnish documents or information reasonably within Client's control and deemed necessary by MGM for proper performance of our services. MGM may rely upon Client-provided documents in performing the services required under this Agreement; however, MGM assumes no responsibility or liability for their accuracy. Client-provided documents will remain the property of Client, but MGM may retain one confidential file copy as needed to support our report.

9. CLAIMS. The parties agree to attempt to resolve any dispute without resort to litigation, including use of mediation, prior to filing of any suit. However, in the event a claim results in litigation, and the claimant does not prevail at trial, then the claimant shall pay all costs incurred in pursuing and defending the claim, including reasonable attorney's fees.

10. OPINIONS OF COST. If included in our scope of services, MGM will use its best efforts and experience on similar projects to provide realistic opinions of costs for remediation or construction as appropriate based on reasonably available data, MGM's designs or MGM's recommendations. However, such opinions are intended primarily to provide information on the order of magnitude or scale of such costs and are not intended for use in firm budgeting or negotiation. Client understands actual costs of such work depend on regional economics, local construction practices, material availability, site conditions, weather conditions, contractor skills, and many other factors beyond MGM's control.

11. TESTIMONY. Should MGM or any MGM employee be compelled by law to provide testimony or other evidence by any party, whether at deposition, hearing or trial, in relation to services provided under this Agreement, and MGM is not a party in the dispute, then MGM shall be compensated by Client for the associated reasonable expenses and labor for MGM's preparations and testimony at appropriate unit rates. To the extent the party compelling the testimony ultimately provides MGM such compensation, Client will receive a credit or refund on any related double payments to MGM.

12. CONFIDENTIALITY. MGM will maintain as confidential any documents or information provided by Client and will not release, distribute or publish same to any third party without prior permission from Client, unless compelled by law or order of a court or regulatory body of competent jurisdiction. Such release will occur only after prior notice to Client.

13. PRIORITY OVER FORM AGREEMENTS/PURCHASE ORDERS. The Parties agree that the provisions of these terms and conditions shall control over and govern as to any form writings signed by the Parties, such as Client Purchase Orders, Work Orders, etc., and that such forms may be issued by Client to MGM as a matter of convenience to the Parties without altering any of the terms or provisions hereof.

14. SURVIVAL. All provisions of this Agreement for indemnity or allocation of responsibility or liability between Client and MGM shall survive the completion of the services and the termination of this Agreement.

15. SEVERABILITY. In the event that any provision of this Agreement is found to be unenforceable under law, the remaining provisions shall continue in full force and effect.

16. ASSIGNMENT. This Agreement may not be assigned by either party without the prior permission of the other.

17. INTEGRATION. This agreement, the attached documents and those incorporated herein constitute the entire Agreement between the parties and cannot be changed except by a written instrument signed by both parties.

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York  Page 8
MGM File No. 99010 (Revised)  06/02/99

18. **LIMIT OF LIABILITY**

   A. In the event the Owner or Client consents to, allows, authorizes or approves of changes to any plans, specifications or other construction documents, and these changes are not approved in writing by the Consultant, the Client recognizes that such changes and the results thereof are not the responsibility of the Consultant. Therefore, the Client agrees to release the Consultant from any liability arising from the construction, use or result of such changes. In addition, the Client agrees, to the fullest extent permitted by law, to indemnify and hold the design Professional and all his employees, offices, and directors harmless from any damage, liability or cost (including reasonable attorneys' fees and costs of defense) arising from such changes, except only those damages, liabilities and costs arising from the sole negligence or willful misconduct of MGM or its employees, officers or directors.

   B. Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Client or MGM. MGM's services under this Agreement are being performed solely for the Client's benefit, and no other entity shall have any claim against MGM because of this Agreement or the performance or nonperformance of services hereunder. The Client agrees to include a provision in all contracts with contractors and other entitles involved in this project to carry out the intent of this paragraph.

   C. The Client agrees to limit MGM's liability and his or her consultants to the Owner and to all Construction Contractors and Subcontractors on the project, due to MGM's negligent acts, errors, or omissions, such that the total aggregate liability of MGM to all those named shall not exceed $250,000 or MGM's total fee for services rendered on this project, whichever is greater.

   The Client shall make no claim for professional negligence, either directly or in a third party claim, against MGM unless the Client has first provided MGM with a written certification executed by an independent design professional currently practicing in the same discipline as the Client and licensed in the State of this project. This certification shall: a) contain the name and license number of the certifier; b) specify each and every act or omission that the certifier contends is a violation of the standard of care expected of an Engineer performing professional services under similar circumstances; and c) state in complete detail the basis for the certifier's opinion that each such act or omission constitutes such a violation. This certificate shall be provided to MGM not less than thirty (30) calendar days prior to the presentation of any claim or the institution of any mediation or judicial proceeding.

   D. The Client shall promptly report to MGM any defects or suspected defects in MGM's work or services of which the Client becomes aware, so that MGM may take measures to minimize the consequences of such a defect. The Client warrants that he or she will impose a similar notification requirement on all contractors in his or her Owner/ Client contract and shall require all subcontracts at any level to contain a like requirement. Failure by the Client, and the Contractors or Subcontractors to notify MGM, shall relieve MGM of the costs of remedying the defects above the sum such remedy would have cost had prompt notification been given.

   E. Payments to MGM shall not be withheld, postponed or made contingent on the construction, completion or success of the project or upon receipt by the Client of offsetting reimbursement or credit from other parties causing Additional Services or expenses. No withholdings, deductions or offsets shall be made from MGM's compensation for any reason unless MGM has been found to be legally liable for such amounts.

   F. If, due to the MGM's error, any required item or component of the project is omitted from the MGM's construction documents, MGM shall not be responsible for paying the cost to add such item or component to the extent that such item or component would have been otherwise necessary to the project or otherwise adds value or betterment to the project. In no event will MGM be responsible for any cost or expense that provides betterment, upgrade or enhancement of the project.

Contact Tank, Greenburgh-Irvington Pump Station, Greenburgh, New York     Page 9
MGM File No. 99010 (Revised)     06/02/99

G. All legal actions by either party against the other arising out of or in any way connected with the services to be performed hereunder shall be barred and under no circumstances shall any such claim be initiated by either party after six (6) years have passed from the date of issuance of the Certificate of Completion, unless MGM's services shall be terminated earlier, in which case the date of termination of this Agreement shall be used.

H. It is intended by the parties to this Agreement that MGM's services in connection with the project shall not subject MGM's individual employees, officers or directors to any personal legal exposure for the risks associated with this project. Therefore, and notwithstanding anything to the contrary contained herein, the Client agrees that as the Client's sole and exclusive remedy, any claim, demand or suit shall be directed and/or asserted only against MGM, a New York corporation, and not against any of MGM's employees, officers or directors.

I. Because evaluation of the existing structure requires that certain assumptions be made regarding existing conditions, and because some of these assumptions cannot be verified without expending additional sums of money or destroying otherwise adequate or serviceable portions of a structure, the Client agrees, to the fullest extent permitted by law, to indemnify and hold MGM harmless from and against any and all damage, liability and cost, including reasonable attorneys' fees and defense costs, arising or allegedly arising out of the professional services under this Agreement, except for the sole negligence or willful misconduct of MGM.

\\MGM_SERVER1\PROJECTS\Proj99\99010\Prop05.doc