UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOWN OF GREENBURGH, | Civil Action No. 07-CV-6966 (WCC) |
| Plaintiff, | ECF CASE |
| vs. | |
| SPECTRASERV, INC., and LIBERTY MUTUAL INSURANCE COMPANY, | |
| Defendants. | |
| SPECTRASERV, INC., and LIBERTY MUTUAL INSURANCE COMPANY, | |
| Third-Party Plaintiffs, | |
| vs. | |
| M.G. MCLAREN, P.C., and DOLPH ROTFELD ENGINEERING, PC, | |
| Third-Party Defendants. | |

**THIRD-PARTY PLAINTIFFS SPECTRASERV, INC.'S AND LIBERTY MUTUAL INSURANCE COMPANY'S BRIEF IN OPPOSITION TO THIRD-PARTY DEFENDANTS DOLPH ROTFELD ENGINEERING, P.C.'S AND M.G. MCLAREN, P.C.'S MOTIONS TO DISMISS THE THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

LEGAL ARGUMENT.................................................................................................................4

I.    Spectraserv's Claims Against the Engineers are Timely Because the
      Engineers Provided Services In Connection With the Concrete Tank
      Tank Project Within Three Years of the Filing of the Third-Party
      Complaint..........................................................................................................................4

      1.    Spectraserv's Negligence Claims Against Rotfeld and
            McLaren Are Timely ...........................................................................................4

      2.    Spectraserv's Tortious Interference Claim Against Rotfeld
            and McLaren Are Timely......................................................................................8

II.   There Exists the Functional Equivalent of Privity Between
      Spectraserv and the Engineers .................................................................................9

III.  There Exist Genuine Issues of Material Fact Regarding
      Whether McLaren Breached its Duty of Care to Spectraserv..................................14

IV.   Spectraserv Has Adequately Pleaded Tortious Interference
      with Contractual Relations.......................................................................................15

CONCLUSION............................................................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Banque Arabe et Intenationale D'Investissement v. Maryland National Bank,*
57 F.3d 146 (2d Cir. 1995).........................................................................................10

*Calcutti v. SBU, INC.,*
224 F.Supp.2d 691, 700 (S.D.N.Y. 2002) ...................................................................8

*Crown Castle USA Inc., v. Fred A. Nudd Corporation,*
2007 WL. 700901 (W.D.N.Y. 2007) ...........................................................................4

*Farrell v. Hallen,*
367 F. Supp. 491 (S.D.N.Y. 2005) ............................................................................17

*Morse/Diesel, Inc. v. Trinity Industries, Inc.,*
859 F.2d 242 (2d. Cir. 1988).................................................................................10,11

*Pennecom B.V. v. Merrill Lynch & Co., Inc.,*
2005 WL. 2044948 (S.D.N.Y. 2005) .........................................................................17

*Stewart v. Jackson & Nash,*
976 F.2d 86 (2d. Cir. 1992)..........................................................................................9

*Stratagem Development Corp. v. Heron Intern. N.V.,*
153 F.R.D. 535 (S.D.N.Y. 1994) ...............................................................................11

*Travelers Casualty & Surety Company v. Dormitory Authority of the State of New York,*
2005 WL. 1177715 (S.D.N.Y. 2005).............................................................10,11,12,13

*Widett v. U.S. Fidelity and Guarantee Co.,*
815 F.2d 885 (2d Cir. 1987)..................................................................................10,11,12

*Williams & Son Erectors, Inc. v. South Carolina Steel Corp.,*
983 F.2d 1176 (2d Cir. 1993).....................................................................................12

### STATE CASES

*Allen v. Blum,*
623 N.Y.S.2d 133 (2nd Dept. 1995) ...........................................................................14

*Appollo-Wallace v. Finger,*
801 N.Y.S.2d 229 (Supp.App.Term 2005) .................................................................14

1141094.6

*Board of Education, Town of Greenburgh, v. Barbaresi & Son, Inc.,*
269 N.Y.S.2d 823 (2nd Dept. 1966) .............................................................................16

*City of New York v. Castro-Blanco, Piscioneri & Associate, P.C.,*
634 N.Y.S.2d 489 (1st Dept. 1995) ...............................................................................4

*In re Clark Patterson Engineers, Surveyor, and Architects, P.C.,*
809 N.Y.S.2d 247 (3rd Dept. 2006). ..............................................................................5

*Cunningham v. Lewenson,*
99 N.Y.2d 531 (2002), app. dism., 294 A.D.2d 327 (2nd Dept. 2002) .........................16

*Glanzer v. Shepard,*
233 N.Y. 236 (1922) ......................................................................................................11

*Greater Johnstown City School District V. Cataldo & Water,*
551 N.Y.S.2d 1003 (3rd Dept. 1990)...........................................................................7,8

*Kartinger Associates, P.C. v. New Windsor,*
108 A.D.2d 898 (2nd Dept. 1985) .................................................................................16

*Kronos, Inc. v. AVX Corporation,*
81 N.Y.2d 90 (1993)........................................................................................................8

*M.G. McLaren, P.C. v. Massand Engineering, L.S., P.C.,*
858 N.Y.S.2d 340 (2nd Dept. 2008) ..............................................................................4

*Northrup Contracting Inc. v. Village of Bergen,*
527 N.Y.S.2d 670 (N.Y.Sup. 1986)...............................................................................11

*Ossining Union Free School District V. Anderson LaRocca,*
73 N.Y.2d 417 (1989) .........................................................................................9,10,11,12

*Quantum Maintenance Corp. v. Mercy College,*
798 N.Y.S.2d 652 (Sup.Ct. Rockland Co. 2005).........................................................17

*Reliance Insurance Company v. Morris Associates,*
607 N.Y.S.2d 106 (2nd Dept. 1994) .............................................................................13

*Seefeldt v. Johnson, M.D.,*
787 N.Y.S.2d 594 (4th Dept. 2004) ..............................................................................14

*Suriano v. City of New York,*
658 N.Y.S.2d 654 (2nd Dept., 1997) ............................................................................16

iii

*Town of Wawarsing v. Camp, Dresser & McKee, Inc.*,
   855 N.Y.S.2d 691 (3rd Dept. 2008)...............................................................................................4

*Unity Sheet Metal Works v. Farrell Lines*,
   101 N.Y.S.2d 1000 (Sup. Ct. New York Co. 1950) ......................................................16

*Walker v. Metropolitan-North Commuter R.R.*,
   783 N.Y.S.2d 362 (1st. Dept., 2004) ............................................................................16

1141094.6

## PRELIMINARY STATEMENT

Defendant/third-party plaintiff Spectraserv, Inc. ("Spectraserv") submits this Memorandum of Law in opposition to Dolph Rotfeld Engineering, P.C's ("Rotfeld") and M.G. McLaren, P.C.'s ("McLaren") (collectively the "Engineers") motions to dismiss Spectraserv's Third-Party Complaint, which was filed on April 11, 2008.

In its Third-Party Complaint, Spectraserv asserted claims for negligence and tortious interference with business and contractual relations against Rotfeld and McLaren. Rotfeld has moved to dismiss the Third-Party Complaint on the grounds that (1) the claims are barred by the three year statute of limitations for professional malpractice and (2) it cannot have tortiously interfered with the contract between Spectraserv and Greenburgh as a matter of law because it was an agent of Greenburgh. McLaren has moved to dismiss the Third-Party Complaint on the grounds that (1) the negligence claim is barred by the three year statute of limitations; (2) there does not exist privity of contract between McLaren and Spectraserv; (3) it provided services in accordance with generally accepted engineering practices; and (4) it cannot have tortiously interfered with Spectraserv's contract with Greenburgh because it did not review Spectraserv's payment applications.

Rotfeld's motion to dismiss is without merit. Contrary to Rotfeld's and McLaren's assertions, Spectraserv's claims were filed within the three year statute of limitations. As set forth below, both McLaren and Rotfeld were actively involved in the construction of the concrete tank, construction administration, site inspection, document review and preparation of proposed revisions and re-design as late as November 2005 – well within three years of the date Spectraserv filed its Third-Party Complaint. Furthermore, Rotfeld is not absolved from liability for tortious interference as an agent of Greenburgh as a matter of law because it committed an

independent willful wrong when it refused to approve payments to Spectraserv on the basis of defective construction in order to avoid liability for its own defective design.

McLaren's additional arguments in its motion to dismiss and for summary judgment are also without merit. The record demonstrates that there existed the functional equivalent of privity between Spectraserv and McLaren as defined by New York courts. In addition to providing design specifications, McLaren performed detailed inspections of Spectraserv's work, had direct communications with Spectraserv, and participated in several meetings with Spectraserv throughout the course of construction and construction administration. Furthermore, although McLaren may not have been directly responsible for reviewing Spectraserv's payment requisitions, McLaren's refusal to approve Spectraserv's work was tantamount to disapproving payment to Spectraserv. Finally, McLaren's conclusory statement that it acted in accordance with accepted engineering practices is insufficient as a matter of law to support summary judgment, and the mere existence of an engineering report that concludes that the tank's structural defects were caused by McLaren's defective design raises genuine issues of material fact regarding the cause of the concrete tank's structural failure.

Accordingly, McLaren's and Rotfeld's motions should be denied.

## STATEMENT OF FACTS

On June 22, 2000, Spectraserv entered into a contract ("the Contract") with The Town of Greenburgh ("Greenburgh") for the construction of a ten million gallon per day water pumping station with a 500,000 gallon rectangular concrete tank ("the concrete tank"). (See Kulcsar Decl., ¶ 2). Greenburgh also entered into a contract with Rotfeld to provide design specifications for construction of the concrete tank and to perform, among other things, construction management and inspection services on the project ("Greenburgh/Rotfeld Contract"). (See Kulcsar Decl., ¶ 3).

2

Rotfeld, in turn, entered into a written contract with McLaren ("McLaren/Rotfeld Contract") to assist Rotfeld in performing its duties under the Greenburgh/Rotfeld Contract. (See Kulcsar Decl., ¶ 4).   The McLaren/Rotfeld Contract required McLaren to provide sealed structural drawings for the concrete tank. (See Kulcsar Decl., ¶ 4).   Rotfeld also delegated to McLaren substantial construction administration responsibilities as well as controlled inspection of construction, review and approval of alternate framing designs, site visits during construction, and review and advice on the disposition of Spectraserv's change orders. (See Kulcsar Decl., ¶ 4).

In December 2001 Spectraserv completed all of its work under the Contract, in accordance with Rotfeld's and McLaren's plans, specifications, and other design documents. (See Kulcsar Decl., ¶ 7).   The concrete tank thereafter developed cracks and imperfections. (See Kulcsar Decl., ¶ 8).   At Greenburgh's request, Spectraserv attempted to repair the leaks, to no avail. (See Kulcsar Decl., ¶ 8).   Spectraserv thereafter hired FAZE Structural Engineers and Detailers, Inc. ("FAZE") to perform an investigation of the structural integrity and serviceability of the concrete tank.  (See Kulcsar Decl., ¶ 9).   FAZE concluded that the failure of the concrete tank was solely due to defects in the Engineers' design.  (See Kulcsar Decl., ¶ 11(a)).

Throughout 2004 and 2005, the Engineers continued working and communicating with Spectraserv and Greenburgh to attempt to rectify the problems with the concrete tank that were caused by the Engineers' defective designs.  (See Kulcsar Decl., ¶ 11).   Among other things, Spectraserv and the Engineers attended meetings at the Greenburgh Town Hall on August 17, 2004 and July 13, 2005, and participated in a conference call on November 17, 2005, for the specific purpose of discussing solutions to the problems with the concrete tank.  (See Kulcsar Decl., ¶ 11).

3

In November 2005, Greenburgh issued its check to Spectraserv in the amount of $93,439.89, representing payment for work performed through August 31, 2005. (See Kulcsar Decl., ¶ 12). However, despite Spectraserv's repeated demands for payment of the unpaid retainage balance ($173,100.80), Greenburgh has refused to pay any additional sums to Spectraserv. (See Kulcsar Decl., ¶ 14).

**LEGAL ARGUMENT**

**I.     Spectraserv's Claims Against the Engineers Are Timely Because the Engineers Provided Services In Connection With the Concrete Tank Project Within Three Years Of the Filing of the Third-Party Complaint**

**1.     Spectraserv's Negligence Claims Against Rotfeld and McLaren Are Timely**

Spectraserv does not deny that its claims against Rotfeld and McLaren are governed by the three year statute of limitations set forth in CPLR §214(6). McLaren and Rotfeld both state that the accrual date for this three year time limitation is the date when they completed their design drawings and specifications and shop drawing review for the Concrete Tank. In doing so, they misapply the law. A cause of action against an engineer for malpractice does not accrue at the time the engineer finishes preparing its design drawings and specifications, but rather, at the time it completes performance of its contract and subsequent termination of its relationship with the plaintiff. Town of Wawarsing v. Camp, Dresser & McKee, Inc., 855 N.Y.S.2d 691 (3rd Dept. 2008); M.G. McLaren, P.C. v. Massand Engineering, L.S., P.C., 858 N.Y.S.2d. 340 (2nd Dept. 2008). Further, New York courts have consistently held in cases against design professionals that "[T]o the extent that a continuing professional services relationship existed, the statute of limitations is tolled so long as the parties continued their professional relationship to rectify the alleged malpractice." Crown Castle USA Inc., v. Fred A. Nudd Corporation, 2007 WL 700901 (W.D.N.Y. 2007); See also City of New York v. Castro-Blanco, Piscioneri & Assoc., P.C., 634

4

N.Y.S.2d 489 (1st Dept. 1995). The continuous representation doctrine "reflects both the unfairness of requiring the injured client to challenge its professional adviser while remedial efforts are under way and the potential abuse where the negligent adviser attempts to avoid liability . . . ." In re Clark Patterson Engineers, Surveyor, and Architects, P.C., 809 N.Y.S.2d 247, 250 (3rd Dept. 2006). In this case, the statute of limitations was tolled during Rotfled's and McLaren's continued active involvement throughout the construction process and during remediation efforts - well beyond the time they first provided the design drawings for the Concrete Tank. See Id.

Indeed, as alleged in the accompanying Declaration of Steve Kulcsar and in Spectraserv's Third-Party Complaint, the Engineers maintained a professional relationship with Spectraserv throughout the construction of the Concrete Tank, during the construction phase as well as the subsequent efforts of all the parties to rectify cracks and leaks that Spectraserv contends were caused by the Engineers' bad design. (Third-Party Complaint, §34). These allegations regarding the Engineers' role in connection with the Project are supported by the Agreement between Greenburgh and Spectraserv (See relevant sections of the General Conditions to the Catskill Aqueduct Pump Station Contract No. 1 – General Construction annexed as Exhibit B to the Declaration of Steve Kulcsar ("Kulcsar Decl.") ("General Conditions")) For example, Paragraph 111 of the General Conditions provides that "[T]he Engineer shall prepare an estimate of the work performed for partial payment". (See General Conditions, ¶111). Paragraph 117 provides that the "Engineer will decide all questions which may arise in relation to the work and the construction thereof...decision of the Engineer shall be a condition precedent to the right of [Spectraserv] to receive any money or payment for work." (See General Conditions, ¶117). Finally, Paragraph 131 provides that "[A]ll materials and workmanship shall be subject to

1141094.6

inspection, examination or test by the Owner and the Engineer". (See General Conditions, ¶131). Each of these paragraphs clearly assigns the Engineer specific duties relating to the administration of the construction of the Concrete Tank beyond merely providing the design drawings.

Spectraserv continued to perform on-site work as late as November 2005. Its application for payment for work performed through August 31, 2005 was approved by the Engineers, and payment was made to Spectraserv by Greenburgh by check dated November 4, 2005. (See Kulcsar Decl., ¶ 12 and Exhibit C thereto). The Engineers' continued performance (beyond the initial design phase) is also evidenced by McLaren's Field Reports as well as McLaren's own admission in its moving papers that it conducted a "series of field visits between January 21, 2003 and March 26, 2004" (See January 21, 2003, March 12, 2003, November 12, 2003, March 10, 2004, March 25, 2004, and March 26, 2004 Field Reports ("Field Reports") annexed as Exhibit 3-7 to the Declaration of Malcom G. McLaren, P.E. in Support of McLaren's Motion to Dismiss ("McLaren Decl.") and McLaren's Brief, p. 8). While McLaren argues that its duties pursuant to its agreement with Rotfeld were limited to providing drawings and minimal administrative duties, the fact that it subsequently performed site inspections and drafted extensive Field Reports demonstrates an ongoing professional relationship with Greenburgh and Spectraserv, which should be further explored during discovery.

Finally, both Rotfeld and McLaren participated in meetings on August 17, 2004 and July 13, 2005, and a conference call on November 17, 2005 with Spectraserv and Greenburgh to discuss the leaks observed at the Concrete Tank, and the possibility of additional work to be performed by Spectraserv. (See Kulcsar Decl., ¶ 11). Rotfeld's and McLaren's presence and

active participation during these meetings is further evidence of their continued involvement and representation beyond merely providing the initial design drawings.

The circumstances of the Engineers' continued involvement in the construction of the Concrete Tank are comparable to those in Greater Johnstown City School Dist. V. Cataldo & Water, 551 N.Y.S.2d 1003 (3rd Dept. 1990) where the court rejected the defendant's statute of limitations defense on the basis of continuous representation. In Greater Johnstown, the plaintiff alleged that the defendant architect's responsibilities included preparation of design specifications, inspection of work performed by the contractors, and providing advice regarding the progress and completion of the work. Id. at 1004. The plaintiff further alleged that two years after final payment was authorized, plaintiff sought and obtained professional advice from the architect, over the course of four years, to remedy problems that had arisen in connection with the project. Id. The court held that there was continuous representation because the architect had continued its responsibilities under the original contract by working with the plaintiff to remedy the problems that had occurred. Id. As such, the statute of limitations was tolled beyond the date of completion of construction and final payment. Id.

Similarly to Greater Johnstown, the Engineers in this case (1) prepared design specifications for the Concrete Tank; (2) performed several site inspections over the course of construction to assess Spectraserv's work; and (3) participated in several meetings with Greenburgh and Spectraserv to attempt to identify and remedy the problems with the Concrete Tank. Supra. Accordingly, the continuous representation doctrine is applicable in this case and, therefore the statute of limitations was tolled until at least November 2005, when the Engineers, Greenburgh and Spectraserv continued to discuss the problems with the Concrete Tank, and potential solutions.

There has been no discovery involving the Engineers, who moved for dismissal shortly after being impleaded in this action. Accordingly, Spectraserv has yet to determine the full and precise nature of the Engineers' roles and responsibilities during this period. Nevertheless, resolution of whether a continuous professional relationship existed "[i]s best made by a trier of the facts rather than by a motion." Greater Johnstown, supra, at 1006. This is especially true here, since Rotfeld failed to attach a copy of its contract with Greenburgh to its moving papers.

Furthermore, McLaren's designation of the March 2004 site visit as the latest possible accrual date for the statute of limitations is unreasonable and conclusory. Although that date may or may not have represented its final site visit – which, itself, can only be determined through discovery – the site visits did not represent the conclusion of its professional relationship with Spectraserv on this Project. Indeed, as shown above, Rotfeld and McLaren continued to be involved in the construction process through at least November 17, 2005, when their representatives participated in a detailed, substantive conference call regarding remediation proposals and alternatives. (See Kulcsar Decl., ¶ 11).

## 2. Spectraserv's Tortious Interference Claims Against Rotfeld and McLaren Are Timely

Equally incorrect is Rotfeld's assertion that Spectraserv's tortious interference claim is barred by the statute of limitations. Since Spectraserv's cause of action for tortious interference is related to its professional malpractice claim, the "continuous representation" doctrine discussed above necessarily applies to Spectraserv's tortious interference claim as well. See Calcutti v. SBU, INC., 224 F.Supp.2d 691, 700 (S.D.N.Y. 2002). Additionally, New York courts have held that a cause of action for tortious interference does not accrue until actual damages are sustained, that is, until a party to the contract ceases making payments. Kronos, Inc. v. AVX Corporation, 81 N.Y.2d 90, 93 (1993).

8

On August 31, 2005, Spectraserv submitted an Application and Certification for Payment in the amount of $94,389.89. Upon approval by the Engineers, Greenburgh submitted payment to Spectraserv in the amount of $93,439.89 by check dated November 4, 2005. (See Kulcsar Decl., Exhibit C). Spectraserv subsequently made requests for final payment of the retainage in the amount of $173,053.01l. (See Kulcsar Decl., ¶ 13). Despite Spectraserv's numerous requests, including its last request on November 29, 2007, Greenburgh has failed to remit the retainage that remains due. (See Kulcsar Decl., ¶ 14). Spectraserv has alleged in its Third-Party Complaint that Greenburgh's failure to remit payment is a direct result of Rotfeld's and McLaren's unjustified refusal to approve Spectraserv's work. Since Spectraserv filed its third-party action against Rotfeld and McLaren within three years of Spectraserv's demand for payment of the outstanding retainage amount, its claim for tortious interference is timely.

## II.    There Exists the Functional Equivalent of Privity Between Spectraserv and the Engineers

In the absence of a contract, the functional equivalent of privity exists between an engineer and a contractor if (1) the engineer is aware that his designs and/or specifications will be used for a particular purpose; (2) there is reliance by a known party or parties in furtherance of that purpose; and (3) there is conduct by the engineer linking him to the contractor and evincing the engineer's understanding of the contractor's reliance on the designs. See Ossining Union Free School Dist. V. Anderson LaRocca, 73 N.Y.2d 417, 425 (1989).

McLaren's statement that a party may not recover in tort in the absence of privity of contract if it cannot establish a fiduciary-like relationship between the parties is an absolute misstatement of the law. (See McLaren's Brief, p. 9). McLaren cites two cases to support its position, both of which are entirely inapplicable to the unique context of engineer liability for defective design. See Stewart v. Jackson & Nash, 976 F.2d 86 (2d. Cir. 1992) (former associate

9

attorney asserted negligent misrepresentation claim against former employer firm for misrepresenting that it had certain practice group when it did not); Banque Arabe et Intenationale D'Investissement v. Maryland National Bank, 57 F.3d 146 (2d Cir. 1995) (participating lender bank asserted fraudulent concealment claim against lead lender bank for failing to disclose Attorney General's objections to borrower condominium's conversion plan).  In citing these cases, McLaren has overlooked cases which directly contradict its position.  See Ossining at 425; See also Travelers Casualty & Surety Company v. Dormitory Authority of the State of New York, 2005 WL 1177715 (S.D.N.Y. 2005). (finding functional equivalent based on existence of contract-like relationship without mention of any fiduciary relationship).  It is simply not New York law that a contractor must demonstrate a fiduciary relationship with an engineer in order to assert a negligence claim based on defective design.  Id.

The remaining cases McLaren cites also fail to set forth the current standard adopted by New York courts for the functional equivalent of privity.  Two of the decisions at the heart of its argument, Widett v. U.S. Fidelity and Guarantee Co., 815 F.2d 885 (2d Cir. 1987) and Morse/Diesel, Inc. v. Trinity Industries, Inc., 859 F.2d 242 (2d Cir. 1988), were penned prior to the 1989 Ossining decision that broadened the functional equivalent of privity exception to incorporate design professionals, and set forth the above-mentioned test.  Supra, 73 N.Y.2d at 425.  At the time of the Widett and Morse decisions, the functional equivalent of privity exception applied only to accountants.  See Morse, 859 F.2d at 247.  Thus, McLaren's use of language such as "extraordinary circumstances" and "special relationship" in describing the functional equivalent of privity standard is outdated and does not represent the current, more liberal standard that has now been widely adopted by New York courts. See Ossining, 73 N.Y.2d

10

at 425. See also, Stratagem Development Corp. v. Heron Intern. N.V., 153 F.R.D. 535, 550 (S.D.N.Y. 1994); Travelers, 2005 WL 1177715 (applying and referencing the "*Ossining* test.").

While the above-mentioned cases fail to set forth the proper standard, they are also factually distinguishable from this case. Although McLaren neglects to acknowledge the Ossining test, it is essentially asserting that the 3rd prong of the test has not been met. In Morse/Diesel, Inc. v. Trinity Industries, Inc., 859 F.2d 242 (1988), the court refused to find the functional equivalent of privity only because the design professionals "were subcontractors with discrete, circumscribed roles in the overall construction project," whose duties were primarily limited to providing design specifications and not construction administration. (citing Northrup Contracting Inc. v. Village of Bergen, 527 N.Y.S. 2d 670, 671 (N.Y.Sup. 1986), quoting Glanzer v. Shepard, 233 N.Y. 236, 238-9 (1922)). In the instant matter, both Rotfeld and McLaren were in direct communication with Spectraserv throughout the construction process and during subsequent field investigations, and had various core responsibilities in the construction administration, including, but not limited to, inspection of the Concrete Tank, approval of Spectraserv's work, and providing supplemental design for additional work to be performed by Spectraserv. (See Field Reports and Kulcsar Decl., ¶¶ 4,11,12).

Additionally, in Widett v. U.S. Fidelity and Guarantee Co., 815 F.2d 885 (2d Cir. 1987), the court's decision relied on lack of direct communication between the subcontractor and the architect, whereas in this case there is evidence of repeated communications between the Engineers and Spectraserv. See also, Morse/Diesel, 859 F.2d at 247 ("Widett held out the possibility, however, of liability of an architect to a subcontractor, even absent privity, in the event of direct communication between them . . . .").

11

Finally, in <u>Williams & Son Erectors, Inc. v. South Carolina Steel Corp.</u>, 983 F.2d 1176 (2d Cir. 1993) the architect's involvement was limited to answering prospective bidders' questions at a pre-bid meeting and providing each with a copy of the meeting minutes. Such facts bear no resemblance to the facts in this case. McLaren's Contract with Rotfeld states that McLaren would engage in "Review of Contractor's detailed shop and erection drawings, for approval. . . . Correspondence during construction, as necessary to clarify or interpret the design intent to the Contractor, in response to Contractor's written requests for information." (<u>See</u> page 2 of 9 of the June 2, 1999 Contract between McLaren and Rotfeld ("McLaren/Rotfeld Contract") annexed as Exhibit 1 to the McLaren Decl.) Additionally, as shown above, Spectraserv and the Engineers interacted throughout the construction process. McLaren's Reports demonstrate that they not only inspected the Concrete Tank on several occasions, but also met and worked with Spectraserv representatives. As shown in the Field Reports themselves, a Spectraserv representative was present at four of the five site inspections that are the subject of the five Field Reports annexed to the McLaren Declaration. Such activity stands in stark contrast to the facts in <u>Williams</u> and <u>Widett</u> where there was an utter lack of direct communication between the relevant parties.

In this case, the first and second prongs of the <u>Ossining</u> test are clearly met. Recent New York decisions have held that design professionals are inherently on notice that the designs they create will be used by contractors or construction workers. <u>Travelers</u>, at *4. Furthermore, it is undeniable that at the time McLaren and Rotfeld prepared the design drawings and specifications, they knew that they would be relied upon by a contractor to complete construction of the Concrete Tank. (<u>See</u> McLaren/Rotfeld Contract). Spectraserv was, therefore, necessarily a part of a definable class that would rely on Rotfeld's and McLaren's design drawings. <u>See</u>

12

Reliance Insurance Company v. Morris Associates, 607 N.Y.S.2d 106 (2nd Dep't 1994); See also Travelers, 2005 WL 1177715 at *7. Finally, McLaren's and Rotfeld's inspections of the Concrete Tank and interactions with Spectraserv during construction demonstrate that Spectraserv was indeed relying upon their design drawings. (See January 21,2003, March 12, 2003, November 12, 2003, and March 10, 2004 Field Reports annexed as Exhibits 3-7 to the McLaren Decl.)

The third prong is also satisfied. Recent New York decisions have held that evidence of direct dealings or communications between an engineer/architect and a contractor regarding the project is sufficient to establish the requisite link required under the third prong to demonstrate the functional equivalent of privity. See Travelers, 2005 WL 1177715. As evidenced by the Field Reports and the fact that Rotfeld and McLaren participated in several discussions with Spectraserv and Greenburgh from August 17, 2004 to November 17, 2005, Spectraserv and the Engineers were in direct communication throughout the course of the project. Therefore, there existed the functional equivalent of privity between Spectraserv and the Engineers.

The record undeniably demonstrates that McLaren (1) provided the design drawings and specifications for the Project; (2) had knowledge that Spectraserv would rely on the design drawings for construction of the Concrete Tank; (3) inspected Spectraserv's work on several occasions; (4) communicated directly with Spectraserv in connection with the construction of the Concrete Tank; and (5) participated in meetings with Spectraserv and Greenburgh to discuss remediation and redesign of the Concrete Tank when cracks and leaks were observed. For these reasons, McLaren's motion to dismiss for lack of privity should be denied.

1141094.6

**III.    There Exist Genuine Issues Of Material Fact Regarding Whether McLaren Breached Its Duty Of Care To Spectraserv**

McLaren's conclusory statement that it did not breach a duty of care owed to Spectraserv because it provided services in "accordance with generally accepted professional engineering standards and practices" is entirely insufficient to support dismissal of Spectraserv's negligence claim.    New York courts have consistently denied summary judgment in professional malpractice cases where the defendant has provided only conclusory statements that it acted in accordance with accepted standards. See Appollo-Wallace v. Finger, 801 N.Y.S.2d 229 (Supp.App.Term 2005) (holding that expert's statement that doctor acted "in accordance with accepted medical standards" was insufficient to grant summary judgment in favor of doctor); Allen v. Blum, 623 N.Y.S.2d 133 (2nd Dept. 1995) (holding that doctor's statement that his treatment of plaintiff "was consistent with the accepted standards" was insufficient for judgment as a matter of law); Seefeldt v. Johnson, M.D., 787 N.Y.S.2d 594 (4th Dept. 2004) (denying summary judgment where defendant's expert's Declaration "only stated in a conclusory fashion that defendant's actions were in accordance with accepted medical standards").

Spectraserv, on the other hand, has provided evidence that leaks in the Concrete Tank are due to McLaren's and Rotfeld's defective design.    In August 2003, Spectraserv hired FAZE Structural Engineers and Detailers, Inc. ("FAZE"), to investigate and determine the cause of the leaks in the Concrete Tank. (See Kulcsar Decl. ¶ 9).    In its investigation, FAZE visited the Project site and reviewed McLaren's record drawings. (See FAZE Summary of Findings dated February 14, 2004 annexed as Exh. B to the Kulcsar Decl. ("Investigation Summary")).    FAZE concluded that the structural failure of the Concrete Tank was the result of three significant defects in McLaren's original design documents. (See Investigation Summary).    Although McLaren summarily rejected FAZE's findings, it failed to provide any calculations or report to

14

support its assertion that its design was not defective and that the leaks were caused by Spectraserv's alleged defective construction.  It is also worth noting that FAZE and Spectraserv have requested that McLaren provide its original calculations made at the time it prepared the design for the Concrete Tank.  McLaren has still not provided its calculations, alleging that they have been "lost".  (See Kulcsar Decl., ¶ 10).

FAZE's Investigation Report, at the very least, demonstrates that there exist genuine issues of material fact regarding whether McLaren provided defective design specifications.  As such, McLaren's conclusory statement that it acted in accordance with accepted professional standards is insufficient as a matter of law to entitle it to summary judgment.

## IV.    Spectraserv Has Adequately Pled Tortious Interference With Contractual Relations

Rotfeld's argument that it cannot be held liable for tortious interference with contractual relations because it is an agent of Greenburgh fails on two grounds: (1) Rotfeld assumes without any legal basis that it is an agent of Greenburgh and (2) even if Rotfeld were an agent of Greenburgh, Rotfeld could nonetheless be liable for tortious interference with contractual relations if it acted with self-interest in refusing to approve payments to Spectraserv.

Rotfeld presupposes in its moving papers that is acted as an agent for the Town of Greenburgh.  However, Rotfeld provides no evidence to support its claim, and provides no explanation as to why it considers itself to be an agent.  Furthermore, the cases Rotfeld cites in support of its assertion that an agent cannot be liable for tortious interference of a principal's contract are inapplicable because (1) they do not address the roles or responsibilities one must undertake in order to act as an agent, (2) they do not pertain to design professionals in a construction context but involve true employee-employer relationships, and (3) the agent in those cases acted only for the benefit of the principal and did not benefit from the alleged inducement

of the breach. See Cunningham v. Lewenson, 294 A.D.2d 327 (2nd Dept. 2002), app. dism.,

Cunningham v. Lewenson, 99 N.Y.2d 531 (2002) (holding that defendant Dean of University

was an agent acting within the scope of authority in inducing University to expel student);

Kartinger Associates, P.C. v. New Windsor, 108 A.D.2d 898 (2nd Dept. 1985), app. dism. 65

N.Y.2d 925 (1985) (holding that town attorney was agent of town and not liable because plaintiff

could not show how attorney benefited from town's alleged breach).

New York courts have, in fact, been reluctant to recognize design professionals as agents.

Suriano v. City of New York, 658 N.Y.S.2d 654, 656 (2nd Dept., 1997) (holding that engineer

hired to supervise construction project was not the owner's agent because it did not "exercise

control over the site"); Walker v. Metro-North Commuter R.R., 783 N.Y.S.2d 362 (1st. Dept.,

2004) (holding that architect was not owner's agent because it did not control or supervise work

or have "authority to direct the construction"); Board of Education, Town of Greenburgh, v.

Barbaresi & Son, Inc., 269 N.Y.S.2d 823 (2nd Dept. 1966) (holding that Board was not bound by

final certificate issued by architect). There is certainly an issue of fact regarding whether Rotfeld

was an agent of Greenburgh during the construction process, especially since Rotfeld failed to

provide us with its contract with Greenburgh. Rotfeld's conclusory statement that it was an

agent is simply insufficient to establish that fact. As such, Rotfeld's argument fails.

Even if Rotfeld were Greenburgh's agent, Rotfeld would not be absolved of any liability

for its wrongful refusal to approve payments to Spectraserv. New York courts have consistently

held that an agent may be held liable for tortious interference with contractual relations if the

agent acts with self-interest to commit a willful wrong. See Unity Sheet Metal Works v. Farrell

Lines, 101 N.Y.S.2d 1000 (Sup. Ct. New York Co. 1950) (motion to dismiss tortious

interference claim against engineer denied even though acts complained of did not necessarily

constitute intentional inducement of breach where plaintiff's allegations that engineer maliciously refused to approve payments to the contractor sufficiently pleaded commission of a willful wrong); See also Quantum Maintenance Corp. v. Mercy College, 798 N.Y.S.2d 652, 658 (Sup.Ct. Rockland Co. 2005); Farrell v. Hallen, 367 F.Supp. 491, 504 (S.D.N.Y. 2005). Rotfeld's self-interest is apparent here, since approval of final payment to Spectraserv would be tantamount to an admission that the leaks observed at the Concrete Tank were not Spectraserv's fault at all – but rather the result of bad design by Rotfeld and McLaren.

Finally, a tortious interference claim need not be pled with particularity. Pennecom B.V. v. Merrill Lynch & Co., Inc., 2005 WL 2044948 at *6-7 (S.D.N.Y. 2005) (motion to dismiss tortious interference claim denied even though Complaint failed to allege that defendant committed independent tort where Court could not conclude beyond doubt that it could be proven).In fact, New York courts will deny a motion to dismiss even where the Complaint fails to explicitly allege that the agent has acted with malice, if it cannot be concluded "beyond doubt" that the plaintiff would be unable to prove the claim. Id.

Spectraserv has alleged in its Third-Party Complaint that (1) Rotfeld provided deficient design documents to Spectraserv; (2) due to the deficient design documents, the Concrete Tank developed cracks; (3) Rotfeld's approval of Spectraserv's work was required before Greenburgh would issue payments to Spectraserv; (4) Rotfeld wrongfully and unreasonably withheld approval of Spectraserv's work, and (5) as a result of Rotfeld's wrongful and unreasonable withholding of approval, Greenburgh refused to remit payment to Spectraserv for the construction of the Concrete Tank. (See Third-Party Complaint, ¶¶ 16,17, 32, 33). These allegations are sufficient to state a cause of action for tortious interference, regardless of whether or not Rotfeld is considered an agent of Greenburgh. Furthermore, without discovery, it cannot

17

be concluded beyond doubt that Spectraserv will not be able to prove that Rotfeld committed a wrongful act in stating that Spectraserv's work was the cause of the cracks and leaks in order to avoid its own liability for deficient design.

McLaren's argument that, because it did not review Spectraserv's payment requisitions, it could not have tortiously interfered with Spectraserv's contract with Greenburgh also fails. First, the fact that McLaren's contract with Rotfeld did not obligate it to do so is not dispositive. Indeed McLaren admits in its moving papers that it performed additional work specifically excluded from McLaren's proposal to Rotfeld, i.e. that it conducted detailed inspections of the Concrete Tank and drafted numerous detailed Field Reports. (See McLaren/Rotfeld Contract, McLaren's Brief, p. 8 and Field Reports). Second, McLaren's statement that it did not explicitly review Spectraserv's payment requisitions is not only a question of fact, but misreads Spectraserv's Third-Party Complaint. Paragraph 33 alleges that "Upon information and belief, third-party defendants McLaren and Rotfeld wrongfully and unreasonably withheld their approval of payment requisitions made by Spectraserv." Contrary to McLaren's interpretation, this allegation does not specifically state that McLaren actually reviewed any payment requisitions, bur rather that through its deliberate and wrongful refusal to approve Spectraserv's work, it caused Greenburgh to withhold payments that should have been made.

While discovery is needed to determine the extent of McLaren's involvement in the disapproval of Spectraserv's work, the record shows that McLaren was actively involved before and after construction of the Concrete Tank. When McLaren inspected the Concrete Tank and drafted its Field Reports noting deficiencies in the Concrete Tank, McLaren undeniably knew that Greenburgh, in reliance on the inspections, would refuse to remit payment to Spectraserv. This is tantamount to withholding approval of Spectraserv's payment requisitions. Furthermore,

McLaren's contract with Rotfeld shows that McLaren was actively involved in the design of the Concrete Tank. As such, without any discovery, it cannot be concluded at this point beyond doubt that both McLaren and Rotfeld did not act with self-interest in stating that Spectraserv's work was deficient in order to avoid liability for their own defective design.

## CONCLUSION

Based on the foregoing, third-party plaintiff Spectraserv respectfully requests that the Court deny third-party defendants McLaren's and Rotfeld's motions to dismiss.

WOLFF & SAMSON PC
Attorneys for Defendants/Third-Party Plaintiffs
Spectraserv, Inc. and Liberty Mutual Insurance Company

BY: _____
    DARRYL WEISSMAN  (DW-7369)
    Wolff & Samson PC
    The Offices at Crystal Lake
    One Boland Drive
    West Orange, NJ 07052
    973-325-1500

Dated August 1, 2008.

19